# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS

**SUMMIT CHURCH,**
a West Virginia Church, **FRED HORNICK,**
in his official capacity as Trustee of Summit
Church, **BERNARD BENNETT,** in his official
capacity as Trustee of Summit Church,
**KENNETH PHILLIPS,** in his official capacity
as Trustee of Summit Church,

and

**CIVIL ACTION NO. 2:15-CV-82
(BAILEY)**

**KENNY A. SEXTON** and **BEVERLY D. SEXTON,**
a married couple,

       Plaintiffs,

v.

**RANDOLPH COUNTY DEVELOPMENT
AUTHORITY,** a West Virginia public corporation,

       Defendant,

v.

**PRIME PROPERTIES, INC.,** a West Virginia
corporation; **RAILYARD ENTERPRISES,** a
West Virginia Limited Liability Company; and
**DURBIN & GREENBRIER VALLEY RAILROAD,
INC.,** a West Virginia corporation,

       Intervenors.

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On this day, the above-styled civil action came before this Court upon consideration of the Plaintiffs' Motion for Summary Judgment [Doc. 34], filed December

1

23, 2015. Defendants and defendant intervenors filed their respective response briefs [Docs. 35 & 36] on January 15, 2016. Plaintiffs filed their replies [Docs. 37 & 38] on January 21, 2016. The Motion is now ripe for adjudication. For the reasons that follow, the Motion is **GRANTED**.

I. Factual and Procedural History

Plaintiffs are the Summit Church ("Summit") and the Sextons, the property owners of the American Mountain Theater ("AMT"), located within the Elkins Railyard in Randolph County, West Virginia. [Doc. 24 at ¶¶ 1-3]. Defendant Randolph County Development Authority ("RCDA") is a public corporation which assists businesses in Randolph County through a variety of different activities including real estate development under the authority of W.Va. Code § 7-12-1, *et seq*. (Id. at ¶¶ 20-22). The RCDA purchased the former CSX railyard for the purpose of developing the area. (Id. at ¶ 24). RCDA then sold off individual parcels to individual buyers subject to the Building Covenants and Standards for the Elkins Railyard ("the Covenants"). (Id. at ¶ 25). The stated purpose of the Covenants was to redevelop the former railyard "as a commercial mixed-use district that reflects the history and culture of the site." (Id. at ¶ 26). Specifically, the Covenants provide that the lots in the railyard "shall be used for commercial business, public and private offices, residential developments with certain restrictions, common areas (e.g., Town Square), and recreational purposes only." (Id. at ¶ 27). On October 26, 2015, the Authority held a special meeting to discuss the proposed sale of the Property to the Church, and determined that a church is not an acceptable land use, which would violate the Covenants. (Id. at ¶¶ 29-30).

Plaintiffs' Amended Complaint asserts the following five counts: Count I - Violation of the Right to Free Exercise Guaranteed by the First Amendment to the United States Constitution (42 U.S.C. § 1983); Count II - Violation of the Right to Equal Protection Guaranteed by the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983); Count III - Violation of Article 3, Section 15 of the Constitution of West Virginia; Count IV - Violation of the Religious Land Use and Institutionalized Persons Act Equal Terms Claim 42 U.S.C. § 2000cc(b)(1) Facial Challenge; and Count V - Violation of Plaintiff's Substantive Due Process under the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983).

II.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec.**

***Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

III.   Discussion

This Court will begin its analysis by considering Summit's statutory claim under the Equal Terms Provision, 42 U.S.C. § 2000cc(b)(1). *See **Lyng v. Northwest Indian Cemetery Protective Ass'n***, 485 U.S. 439, 445 (1998)("A fundamental and longstanding principle of judicial restraint requires courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

That provision provides:

(b) DISCRIMINATION AND EXCLUSION–

(1) EQUAL TERMS–No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious denomination.

42 U.S.C. § 2000cc(b)(1).

It is not disputed that the Covenants are land use regulations within the meaning of 42 U.S.C. § 20000cc(b) and that Summit's proposed church use is a use as a religious assembly. The question is whether it was treated on less than equal terms with a nonreligious denomination and what constitutes a proper comparator. The

Fourth Circuit has yet to weigh in on this issue, so this Court has considered the various tests developed by other circuits. These essentially fall into three categories: (1) the "regulatory purpose" test; (2) the "accepted zoning criteria" test; and (3) the "functional intents and purposes" test. Each approach attempts to compare a religious entity to a nonreligious entity on the basis of a chosen aspect. See ***Midrash Sephardi, Inc. v. Town of Surfside***, 366 F.3d 1214 (11th Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005); ***Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch***, 510 F.3d 253 (3d Cir. 2007); ***River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.***, 611 F.3d 367, (7th Cir. 2010); ***Third Church of Christ, Scientist v. City of New York***, 626 F.3d 667 (2d Cir. 2010); ***Rocky Mountain Christian Church v. Bd. of County Comm'rs***, 613 F.3d 1229 (10th Cir. 2010), *cert. denied*, 562 U.S. 1136 (2011); ***Opulent Life Church v. City of Holly Springs***, 697 F.3d 279 (5th Cir. 2012); ***Centro Familiar Cristiano Buenas Nuevas v. City of Yuma***, 651 F.3d 1163 (9th Cir. 2011).

In ***Lighthouse Institute for Evangelism v. City of Long Branch***, 510 F.3d 253 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained that the Equal Terms provision requires a secular comparator that is similarly situated as to the *regulatory purpose* of the regulation in question–similar to First Amendment Free Exercise jurisprudence. The Court went on to explain:

> It is undisputed that, when drafting the Equal Terms provision, Congress intended to codify the existing jurisprudence interpreting the Free Exercise Clause. See 146 Cong. Rec. S7774 (July 27, 2007)(Senate Sponsors' statement)(sections 2(b)(1) and (b)(2) "enforce the Free Exercise rule against laws that burden religion and are not neutral and

5

generally applicable"). Under Free Exercise cases, the decision whether a regulation violates a plaintiff's constitutional rights hinges on a comparison of how it treats entities or behavior that have the same *effect* on its objectives.

As the Supreme Court held in **Smith**, regulations that are neutral and of general applicability are presumptively valid under the Free Exercise clause even if they impose an incidental burden on the exercise of religion. ***[Employment Div., Dept. of Human Res. of Oregon v.] Smith***, 494 U.S. [872], 878-79 [(1990)]. A regulation does not automatically cease being neutral and generally applicable, however, simply because it allows certain secular behaviors but not certain religious behaviors. The impact of the allowed and forbidden behaviors must be examined in light of the purpose of the regulation.

. . .

Thus, . . . the relevant analysis under the Equal Terms provision of RLUIPA must take into account the challenged regulation's objectives: a regulation will violate the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are *similarly situated as to the regulatory purpose*. There is no need, however, for the religious institution to show that there exists a secular comparator that performs the same functions.

510 F.3d 253, 264-66 (emphasis in original).

In this case, several types of nonreligious assemblies and institutions are permitted as of right under the Railyard Covenants. These include: convention centers; restaurants and cafes; professional offices; public buildings, such as libraries, post offices, museums, repositories, and visitor's centers; public offices, including federal, state, county, and local; public squares and common areas, such as a town square, plaza, or trailhead; recreational facilities including parks, multiuse trails, and public performance venues; tourist-oriented businesses, including theaters, other performance venues, museums, and seasonal attractions. See Doc. 26-11.

Again, the stated purpose of the Covenants was to redevelop the former railyard "as a commercial mixed-use district that reflects the history and culture of the site." (Id. at ¶ 25). Specifically, the Covenants provide that the lots in the railyard "shall be used for commercial business, public and private offices, residential developments with certain restrictions, common areas (e.g., Town Square), and recreational purposes only."

In *Lighthouse*, the Appellate Court held that the district court erred "because it [was] not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than an 'assembly hall' that could be used for unspecified meetings . . .." 510 F.3d at 272. As such, the Court found that the defendant had failed to create a genuine issue of material fact as to whether the subject ordinance treated religious assemblies or institutions on less than equal terms with non-religious assemblies or institutions that caused equivalent harm to its governmental objectives. *Id*. at 272-73. Accordingly, the Court remanded with instructions to enter summary judgment in favor of the church.

Similar to *Lighthouse*, the RCDA permits several types of non-religious assemblies without explanation of how their presence in the Railyard further the Covenants' objectives. For instance, convention centers that could be used for unspecified meetings are permitted. Libraries and post offices are permitted. Government offices are permitted. This Court fails to see how these are either "commercial" uses or how they "reflect[] the history and culture of the site." The defendants wholly fail to attempt to define what they believe the "history and culture of the site" even is. It was a railyard. A railyard is essentially a complex series of railroad tracks for storing, sorting, or loading and unloading railroad cars and locomotives. Therefore, an operating train, a railroad museum or railroad-themed restaurant – which do exist in the current Elkins Railyard – theoretically make sense under the RCDA's vision. The other existing establishments are nothing more than "medical tenants, including Elkins Physical Therapy, Elkins Dialysis Center, and the Appalachian Animal Hospital. The northern portion of the Railyard, in its close proximity to the Davis Memorial Hospital, is morphing into something more akin to a medical park. The defendants have not shown, however, how a church would harm the Covenants' objectives any more than the other permitted uses. And this Court finds that the church is being treated on less than equal terms with these other permitted uses. Accordingly, this Court finds that the plaintiffs have prevailed on their Equal Terms challenge.

The Covenants are at best a collection of ill-defined, contradictory, and ambiguous terms and uses which do not conform to the stated purpose of the Railyard. The Covenants also conflict with the Elkins City Code, which permits churches in areas listed as "commercial use districts." Elkins City Code Section 21-16(b) ("In the

commercial district, all buildings . . . may be used for any use permitted in the residential district . . ..." Section 21-15 Permitted uses – In residential districts, Subsection (e), includes "Churches.") As the plaintiffs correctly note, "[i]f the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, remains of doubtful meaning, it will be construed against rather than in favor of the covenant." ***Deutsch v. Mortgage Securities Co.***, 96 W.Va. 676, 681, 123 S.E. 793, 795 (1924). This Court will allow the Summit Church to purchase the Sexton's property and use the same for its church.

The only argument the Intervenors assert worth mentioning is that it would interfere with the law that provides that bars and restaurants cannot be located within 300 feet of a church. This argument is unavailing for two reasons. First, Elkins has become a "home rule" location which has already stated its intent to eliminate this outdated restriction. Second, this argument is a red herring as it is fairly transparent that the restriction is not enforced. See for example, the proximity of Beander's Restaurant and Tavern to the First United Methodist Church in Downtown Elkins. This is an acceptable enforcement, however, as the three-hundred feet rule appears to be within the discretion of the commissioner. See W.Va. Code § 11-16-8(d). Accordingly, this Court has given this little consideration in its decision to permit the sale to the Church.

### CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment **[Doc. 34]** is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: March 2, 2016.

```
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE
```